UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRANCE WILSON, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:19 CV 3396 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

In 2018, Movant Terrance Wilson pleaded guilty to a superseding information charging him with one count of conspiracy to distribute and possess with intent to distribute heroin, cocaine, and marijuana, and to one count of possession of a firearm in furtherance of a drug trafficking crime. Case No. 4:15CR441 CDP. The firearm count alleged that Wilson, acting alone and with others, unlawfully killed or caused to be killed three victims. I sentenced Wilson to thirty-five years' imprisonment and five years' supervised release, the sentence agreed to in his binding plea agreement. Wilson now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He argues, among other things, that his guilty plea is invalid and his counsel was ineffective. I will deny his motion because his claims are waived, procedurally defaulted, or otherwise meritless.

## Background

In September of 2015 Terrance Wilson and Donald Stewart were indicted on two counts of possessing a firearm during a drug trafficking crime resulting in death.  The two murder victims in that indictment were Michael McGill and Darion Williams.  On June 1, 2016, a superseding indictment was returned, this time in four courts.  Both defendants were charged with one count of conspiracy to distribute and possess with intent to distribute mixtures or substances containing detectable amounts of cocaine and heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1), and three counts of possessing a firearm in furtherance of a drug trafficking crime, resulting in the deaths of Ronald James, Michael McGill, and Darrion Williams, Jr., each in violation of 18 U.S.C. §§ 2 and 924(c) and (j) (Counts 2, 3, and 4).

Pretrial proceedings were lengthy, including changes of counsel, several trial settings and several continuances.[1]  Finally the case was set to begin trial on Tuesday, April 24, 2018.  On Monday April 23—the day before the joint trial of both defendants was to begin—counsel notified chambers that the government had made a new plea offer to Wilson, which he was considering.  The Court therefore

---

[1] Both defendants faced three death-eligible charges under 18 U.S.C. § 924(j), and so each defendant was appointed two lawyers.  The government elected not to seek the death penalty against either defendant. (Criminal ECF 66.)  The Court nevertheless allowed both defendants to continue with two court-appointed counsel.

set an additional hearing under *Missouri v. Frye*, 566 U.S. 133, 145-47 (2012), to make a record of the offer and of Wilson's response to it.[2]

At that hearing, government counsel stated that it had proposed that Wilson plead guilty to a criminal information with just two counts: Count 1 would be essentially the same as Count 1 in the Superseding Indictment—conspiracy to distribute and possess with the intent to distribute cocaine, heroin, and marijuana—but Count 2 would combine the three firearms charges into a single offense. (Criminal ECF 191.)[3]  In exchange, Wilson would enter into a binding plea agreement in which the parties would jointly agree to a sentence of 35 years—10 years on the drug conspiracy charge, and 25 years on the charge of possessing firearms in connection with a drug trafficking offense.  Government counsel stated that if Wilson declined the offer, the government intended to file a criminal information under 21 U.S.C. § 851, which would raise the maximum sentence Wilson was facing on Count 1 from twenty years' imprisonment to thirty years' imprisonment.  Counsel also stated that, if Wilson were convicted, the government would ask the Court to sentence him to the maximum allowable term, which would have included consecutive life sentences for Counts 2, 3, and 4.  After the

---

[2] The Court had held several previous pretrial and *Frye* hearings (Criminal ECF 120, 125, 164, 177.)

[3] All further references to ECF documents are to entries in the criminal case docket, unless otherwise noted.

government described its position and offer, Wilson indicated that he was still considering whether to accept the offer and plead guilty.  (ECF 191.)  I therefore recessed the hearing at 4:08 p.m. to allow Wilson to discuss the offer with his counsel.  The ensuing proceedings were, to put it mildly, tortuous.

When Court resumed at 4:55 p.m., the parties informed the Court that Wilson had accepted the government's offer and signed a written guilty plea agreement.  After placing Wilson under oath, I asked him several questions to ensure that his guilty plea was knowing and voluntary.  Wilson stated that no one forced or threatened him to plead guilty, but when I asked if he had read the entire agreement and discussed it with his lawyers before signing, Wilson stated that he had not.  (ECF 193 at pp. 12-13.)

The Court took another recess from 5:14 p.m. to 5:48 p.m. to allow Wilson to read the agreement.  Upon return, Wilson expressed reservations about pleading guilty before he could discuss the decision with his wife.  However, after the government described the statutory penalties Wilson would face if he were convicted at trial, he stated he wanted to accept the government's offer.

I again asked Wilson several questions to ensure that his guilty plea was knowing and voluntary.  Wilson acknowledged that he read and signed the agreement and that everything in the agreement was true.  However, when I asked him about the facts supporting both of the charges, he stated that not everything

was accurate. (*Id.* at p. 23.)  When I asked what was not true, he stated, "I just – I think I'll stand trial, your Honor." (*Id.* at p. 24.)

Because Wilson did not accept the government's offer, government counsel moved to withdraw the Superseding Information and stated he intended to file a criminal information under 21 U.S.C. § 851, seeking the enhanced statutory penalties under 21 U.S.C. § 841 on Count 1. Wilson then changed his mind yet again:

> [Wilson:] All right. All right, Your Honor.  I'll take it, Your Honor.
> [The Court:] I'm sorry?
> [Wilson:] Everything True.  I'll take it.

(*Id.* at p. 25.)

Again, I asked Wilson about the facts in the agreement.  He stated that he was involved with the drug conspiracy described in the agreement, and that everything related to the drug conspiracy was true.  But when I asked him whether the facts in the agreement related to the killing of Ronald James were true, he about-faced:

> [The Court:] . . . Is that what happened?
> [Wilson:] No, Your Honor.
> [The Court:] Okay. What did happen?
> [Wilson:] [Stewart] was basically supposed to have took the hit and went – and went to kill what you call it.
> [The Court:] He was supposed to take the hit?
> [Wilson:] Yeah.

- 5 -

> . . .
>
> [The Court:] And so what he – what were you doing involved with it? What was your involvement with it?
>
> [Wilson:] I knew about it.

(*Id.* at pp. 27-28.) At 6:16 P.M. the Court recessed until the next morning.

When Court resumed, Wilson again stated that he would plead guilty to the information. I again placed him under Oath and continued the previous days' examination. This time, Wilson admitted that everything the government stated was true. This included his participation in the drug conspiracy and his participation in the three murders, including one where he was one of the shooters. (ECF 237 at p. 6.) He also acknowledged that he understood what was happening, understood the maximum sentences he was facing and the sentencing procedure, understood the effect of the binding plea agreement and the fact that he was agreeing to a thirty-five year sentence, and understood that he waived certain rights as part of his guilty plea agreement. (ECF 237.) At the conclusion of the hearing, I found that Wilson entered his plea knowingly and voluntarily and had a factual basis, and so I finally accepted his plea. That hearing concluded at 10:15 a.m. (ECF 188.) At 11:00 a.m. we began the trial of the co-defendant Donald Stewart. (ECF 197.)

On April 30, 2018, on the fourth day of the Stewart trial, the Court received a letter from Wilson, dated April 25, the day after his plea. The letter was docketed as a motion to withdraw guilty plea. (ECF 213, 214.) In the letter,

Wilson stated that he wanted to withdraw his plea and that he had answered the questions at the plea hearings untruthfully. He said that "[e]verything was moving fast" and his "mind was not processing at the same speed." (ECF 213 at p. 1.) I denied his motion because he failed to show any fair and just reason for asking to withdraw his plea. I explained:

> Wilson repeatedly stated that he understood his rights and wished to plead guilty. There are six separate transcripts of the hearings conducted on April 23 and 24, which culminated in the Court's accepting his plea. I have carefully reviewed those transcripts and they comport with my memory of the events – Wilson knowingly and voluntarily entered his guilty plea. He was given ample – indeed, probably excessive – time to discuss the issues with his counsel and his family once he belatedly indicated that he wished to plead guilty. Although he indicated that he was uncertain about whether he wanted to plead or go to trial on several occasions, each time he was given additional time to consult with his counsel and he then reiterated that he wished to plead. He also was given additional time to try to negotiate a better deal with the prosecution, but he ultimately was definite in his decision to plead. He repeatedly stated that he understood that he was agreeing to a thirty-five year sentence. And he made it very clear, by admitting under oath and by signing the plea agreement, that he in fact was guilty of the drug conspiracy and murders to which he pleaded guilty.

(ECF 242 at pp. 1-2.)

I sentenced Wilson to the thirty-five years' imprisonment agreed to in the binding plea agreement. (ECF 259.) He then appealed the denial of his motion to withdraw the plea. The Eighth Circuit affirmed my denial of that motion. *United States v. Wilson*, 779 F. App'x 414, 415 (8th Cir. 2019); (ECF 319).

Wilson now moves to vacate his conviction and sentence. Construing his motion liberally, Wilson asserts the following grounds for relief:

1. His guilty plea is invalid because I failed to advise him that I intended to question him under oath and that any answers may later be used against him, I failed to advise him "of the full and complete extent of all possible pleas, i.e. nolo contendere option," (Civil ECF 3-1 at p. 2), and the prosecutor threatened to increase charges in the indictment if he did not plead guilty;

2. His counsel was ineffective by advising him to sign the plea agreement even though it waived future discovery, failing to appeal the denial of his motion to dismiss the Superseding Indictment, failing to appeal the denial of his motion for a bill of particulars, failing to appeal the denial of his motion for severance, failing to appeal the denial of his motion for a speedy trial, failing to appeal the denial of his choice of counsel motion, failing to appeal any sentencing issues, "creating a waiver eliminating any possible appeal," (*Id.* at p. 4), and failing to give him a copy of his discovery;

3. Aiding and Abetting does not qualify as a crime of violence under 21 U.S.C. § 924(c)(3)(A) or (B); and

4. "§ 846 and § 841 lack a categorical match as Missouri statute is indivisible and over-broad thus not a generic match." (*Id.* at p. 11.)

Wilson later filed a motion to amend or supplement his § 2255 motion to argue that he is entitled to collateral relief under *United States v. Taylor*, 142 S. Ct. 2015 (2022).

## Discussion

### A. Wilson Waived His Right to Assert Grounds 1, 3, and 4

As part of his plea agreement, Wilson waived his rights to appeal "all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea"; "all rights to appeal all

- 8 -

sentencing issues other than Criminal History"; and "all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel." (ECF 189 at pp. 17-18.) At the April 24 hearing, Wilson stated that he understood he was waiving these rights. (ECF 237 at pp. 11-12.)

It is well established a defendant may waive his or her appellate rights as part of a plea agreement. *United States v. Goings*, 200 F.3d 539, 543 (8th Cir. 2000). The waiver, of course, must be made knowingly and voluntarily, and its enforcement may not result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003) (en banc). Defendants may also waive the right to file a post-conviction § 2255 motion, with several exceptions, including claims for ineffective assistance of counsel. *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000).

I previously found that Wilson's guilty plea was knowing and voluntary, both when I accepted the plea and again when I denied his motion to withdraw his plea. On appeal, the Eighth Circuit agreed: "the plea hearing transcripts show that Wilson understood the plea agreement, and knowingly and voluntarily entered into the agreement, despite his later statements at sentencing asserting that he had not fully understood his plea agreement and that he had been misled by his attorneys." *Wilson*, 779 F. App'x at 415; (ECF 319).

Wilson nevertheless makes some arguments that could be construed that his guilty plea was not knowing and voluntary. In Ground 1, he argues that I did not inform him I intended to question him under oath and I did not inform him of a nolo contendere plea. He also argues that his plea was involuntary because the prosecutor wrongly threatened to increase the charges and his potential sentence if he did not plead guilty.

The arguments in Ground 1 are meritless. The plea transcript shows that I twice explicitly informed Wilson that I was going to put him under oath and that "once you've sworn to tell the truth, your answers to my questions are subject to the penalties of perjury, meaning that you could be prosecuted if you told me a lie." (ECF 193 at p. 4; ECF 237 at p. 2-3.)  Both times I asked Wilson if he understood and both times he answered, "Yes ma'am."

Wilson's argument that I should have informed him of the existence of a nolo contendere plea is not based on Rule 11, Fed. R. Crim. P. or any other authority. He appears to believe that somehow a nolo plea would have entitled him to a lower sentence, but that is not the law.[4]

---

[4] Wilson mistakenly believes that "a federal court after accepting a nolo plea is not authorized to impose a sentence of imprisonment." (Civil ECF 3-1 at p. 2.)  But a plea of nolo contendere, or "no contest," is merely a statement of unwillingness to contest the charges. It has the same effect as a guilty plea, and a defendant who pleads nolo contendere is subject to the same sentence as if he had just pleaded guilty. § 176 Nolo Contendere Pleas, 1A Fed. Prac. & Proc. Crim. § 176 (5th ed.)

Wilson also argues that government counsel did something improper by stating that if he did not accept the plea they would file an information under 21 U.S.C. § 851 alleging his prior drug conviction, which would have increased his maximum sentence on Count 1 under 21 U.S.C. § 841.  But these statements are not improper coercion; they are "accurate statements of what the prosecutor might have done if [defendant] had gone to trial." *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997).  As the Supreme Court explained nearly half a century ago: "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Bordenkircher v. Hayes*, 434 U.S. 357, 364, (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)).

Because Wilson has not shown that his waiver was not knowing and voluntary or that enforcement of the waiver would result in a miscarriage of justice, I will enforce his waiver.  In Grounds 1, 3, and 4, Wilson challenges the validity of his plea, the sufficiency of his § 924 conviction, and the sufficiency of his § 846 and § 841 conviction.[5]  He waived his right to assert any of these claims.  I will accordingly deny Grounds 1, 3, and 4.

---

[5] To the extent Wilson argues that the government's threat to file a superseding indictment constituted prosecutorial misconduct, the argument does not fall within the scope of the waiver.

### B. Alternatively, Wilson Procedurally Defaulted Grounds 1, 3, and 4

Even if Wilson had not waived his right to assert these claims in this proceeding, his claims are procedurally barred. Generally, "a petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." *Jennings v. United States*, 696 F.3d 759, 762 (8th Cir. 2012). To obtain collateral review of a procedurally defaulted claim, "a habeas petitioner must show either that there was cause for his procedural default and actual prejudice, or that he is actually innocent of the crime for which he was convicted." *Id.* at 764.

Wilson failed to raise Grounds 1, 3, and 4 on appeal. His sole claim on appeal was that I abused my discretion by refusing to allow him to withdraw his plea. To the extent that he challenged the knowing and voluntary nature of his plea, he failed to raise any of the arguments he raises here. Wilson does not attempt to show cause and prejudice for this default nor argue that he is actually innocent. Thus, Grounds 1, 3, and 4 are procedurally barred.

### C. Wilson's Ineffective Assistance of Counsel Claims are Meritless

Wilson raises several claims that his trial or appellate counsel rendered ineffective assistance by: advising him to sign the plea agreement even though it

---

However, as explained above, this threat does not constitute misconduct. *See Bordenkircher*, 434 U.S. at 363 ("[I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.").

- 12 -

contained a waiver of appeal and waived his right to future discovery; failing to appeal the denial of his motion to dismiss the superseding indictment, the denial of his motion for a bill of particulars, the denial of his motion for severance, the denial of his motion for a speedy trial, the denial of his choice of counsel motion, and failing to appeal the sentence; and failing to give him a copy of his discovery.

To show ineffective assistance of counsel, Wilson must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his counsels' performance fell "below an objective standard of reasonableness." *Id.* at 688. Second, he must show that his counsels' deficient performance prejudiced him, that is, "there is a reasonable probability, but for counsel[s'] unprofessional errors, the result of the proceeding would have been different." *Id.* at 695. When a movant claims that ineffective counsel caused him to plead guilty, prejudice means there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985).

Showing ineffective assistance of appellate counsel carries the same *Strickland* requirements of showing both deficient performance and prejudice. When the argument is that counsel failed to raise issues on appeal, the deficient performance requirement is particularly rigorous, because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal[.]" *Jones v. Barnes*, 463 U.S. 745,

- 13 -

751 (1983). Accordingly, absent contrary evidence, courts "assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)). The prejudice standard is equally rigorous, requiring movant to show that the result of the proceeding would have been different had counsel raised the issue on appeal. *Id*. Thus, counsel cannot be deemed to have been ineffective for failing to raise meritless issues on appeal.

*Trial Counsel*

None of Wilson's arguments that trial counsel were ineffective satisfy the *Strickland* standard. As an initial matter, at the plea hearings, Wilson swore that everything in the guilty plea agreement was true, which included his agreeing that he was "fully satisfied with the representation received from counsel," that he "reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel," and that "[d]efense counsel has completely and satisfactorily explored all areas which [Wilson] requested relative to the government's case and any defenses." (ECF 193 at p. 20; ECF 189 at p. 21.) The following morning he admitted that he had, in fact, committed all the acts showing the elements of each crime. (ECF 237.) At the end of the hearing I summarized the proceedings and asked him again: "[Y]ou have told me enough to accept your guilty plea. I want to make sure you really want to

do that. Is that what you want to do?" (ECF 237 p. 17.) He answered, "Yes, ma'am." I then asked him how he plead and he answered, "Guilty."

These "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And his conclusory allegations to the contrary do not overcome that presumption. *Id.* ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Even if Wilson's claims were not contradicted by his statements, they would still fail. Wilson argues that his counsel was ineffective by advising him to agree to the appeal waiver because "there would have been several non-frivolous arguments that would have been preserved, to include the 'Massiah' violation, holding it violates due process to extract a confession by using alternative means not covered in 'Miranda.' " (Civil ECF 3-1 at pp. 4-5.) But Wilson does not explain what counsel should have done differently. It is unclear whether Wilson believes that his counsel should have negotiated the same agreement without the waiver or should have advised him to reject the agreement altogether. Either way, Wilson does not show that counsel would have been able to achieve a more favorable plea agreement—the record of the government's position at the hearings provides strong evidence to the contrary—nor has he shown that he would not have

pleaded guilty and would instead have gone to trial if counsel had not advised him to agree to this plea.

Moreover, the record shows that Wilson gained substantial benefit from the agreement. By pleading guilty, Wilson avoided the possibility of consecutive life sentences for the § 924(c) charges—murders that Wilson admitted committing or aiding and abetting. (*See* ECF 237.) His co-defendant was convicted of Counts 1, 3, and 4 at trial and sentenced to twenty years' imprisonment on Count 1 and life imprisonment on Counts 3 and 4. (ECF 292.)

Wilson also argues that his counsel was ineffective by advising him to sign a plea agreement that waived his right to future discovery, "eliminating any avenue that may prove prejudice of I.A.C. and prosecutor misconduct." (Civil ECF 3-1 at p. 4.) But Wilson does not explain what future discovery would show; he merely speculates that it could reveal evidence of ineffective assistance of counsel and prosecutorial misconduct. This entirely speculative claim is insufficient to show either deficient performance or prejudice.

Wilson also alleges that trial counsel was ineffective for not giving him a copy of discovery, but he contradicted this by admitting at the plea hearing that he had reviewed at least some of the discovery. (ECF 193 at p. 5.) In the plea agreement, of course, he admitted that he reviewed and discussed the government's evidence and possible defenses with counsel. (ECF 189 at p. 21.) But even if

- 16 -

counsel failed to show him all of the discovery, Wilson has not shown that this would have changed anything or that he would have proceeded to trial.

Wilson's speculation is insufficient to rebut the presumption that counsels' performance falls within a broad range of professional conduct, or to show that he was prejudiced by his counsels' alleged failure. *See Strickland*, 466 U.S. at p. 689.

*Appellate Counsel*

The Court of Appeals appointed one of Wilson's trial counsel to represent him on appeal. (ECF 274.) Appointed counsel filed a brief in compliance with *Anders v. California,* 386 U.S. 738 (1967). The Court of Appeals allowed Wilson to file a pro se supplement. (ECF 313.) As discussed above, the Court of Appeals considered and rejected Wilson's claim that he should have been allowed to withdraw his guilty plea. (ECF 319.)

Wilson has provided a long list of things that he believes counsel was ineffective for failing to appeal. He argues that the denial of his many pretrial motions should have been appealed. But Wilson waived the right to appeal the denial of those motions. Claims within the scope of a valid and enforceable appeal waiver are subject to dismissal on appeal. *See United States v. Scott*, 627 F.3d 702, 704 (8th Cir. 2010). Thus, any appeal of the Court's denial of Wilson's pretrial motions would have been dismissed. Counsel is not ineffective for failing to make meritless appeals.

Wilson next argues that his counsel was ineffective for failing to "appeal any sentencing issues pending in S. Ct." (Civil ECF 3-1 at p. 4.) Again, he specifically waived the right to appeal sentencing issues other than criminal history, and he entered into a binding plea agreement under Rule 11(c)(1)(C) for an agreed sentence of thirty-five years. An appeal of the sentence would therefore have been without merit.

To the extent that he argues that appellate counsel should have argued that his conviction for possessing a firearm in furtherance of a drug trafficking crime is invalid under *United States v. Davis*, 139 S. Ct. 2319 (2019), this claim also lacks merit. Wilson's conviction is unaffected by *Davis*. In *Davis*, the Court held that the definition of a "crime of violence" in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. *Id.* at 2336. However, the Court left untouched the definition of a "drug trafficking crime" found in § 924(c)(2). Here, Wilson pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, not a crime of violence, so any appeal on this basis would not have succeeded.

Wilson has failed to provide any basis to overcome the assumption "that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Brown*, 528 F.3d at 1033. He has also failed to show prejudice because the issues he argues counsel should have raised on appeal are without merit.

**Pro Se Supplemental Motions**

In July 2022, Wilson filed a "pro se supplemental motion and request for leave of Court." (Civil ECF 22.) In that motion, he claimed that the Supreme Court's recent decision in *United States v. Taylor* entitles him to collateral relief. 142 S. Ct. 2015 (2022). In August of 2020 he filed a "Traverse Motion with Petition for Appointment of Counsel," which reargued many of the claims already discussed and added a claim for relief under the First Step Act. (Civil ECF 18).

Wilson's argument in the most recent motion is similar to his argument that *Davis* rendered his conviction invalid: he reasons that because the *Taylor* Court held that Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A), so neither should his conviction on Count 1. This argument fails for the same reason the *Davis* argument failed: Wilson was convicted of possessing a firearm in furtherance of a drug trafficking crime, not a crime of violence, so his conviction is unaffected by *Taylor*.

In the "Traverse Motion" Wilson argues many of the same points discussed already, but then includes a section entitled "First Step Act." In that portion of the traverse he adds an argument that under the First Step Act multiple sentences under 21 U.S.C. § 924(c) in the same case cannot be "stacked" or run consecutively to one another. But Wilson was convicted and sentenced on only one § 924(c) count. Although that count included three separate uses of a firearm resulting in death, there was only one sentence. And as agreed to by Wilson in his plea agreement, he

received a sentence of thirty-five years' imprisonment, which consisted of ten years for the drug offense and one consecutive sentence of twenty-five years for the § 924(c) count.  Wilson is not entitled to relief under the First Step Act.

Accordingly,

**IT IS HEREBY ORDERED** that Terrance Wilson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that Wilson's "Pro Se Supplemental Motion and Request For Leave of Court" [22] is denied.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of March, 2022.